# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

KONSTANTIN SHVARTSER,

    Plaintiff,

    v().

EVELINA LEKSER, et al.

    Defendants.

Civil Action No. 18-473 (JDB)

## MEMORANDUM OPINION

Before the Court is [10] plaintiff's motion for a preliminary injunction. Plaintiff seeks to enjoin defendants SP Funding 452, LLC and Snowpoint Capital, LLC (collectively, the "lender defendants") from proceeding with a foreclosure sale of the property located at 2150 Florida Avenue NW in Washington, D.C. ("the property"), of which plaintiff is a joint owner. Plaintiff alleges that the security interest on which the lender defendants seek to foreclose was invalidly transferred by defendant Evelina Lekser—plaintiff's daughter and the other joint owner of the property—using a forged power of attorney. For the following reasons, the Court will grant plaintiff's motion and preliminarily enjoin the foreclosure sale.

## BACKGROUND

In October 2008, plaintiff and defendant Lekser purchased the property as joint tenants with right of survivorship for $800,000. They did so with the intention of renovating the property and ultimately "flipping" it for a profit. Verified Compl. [ECF No. 1] ¶¶ 16–17. They financed the purchase by acquiring a $417,000 loan from Bank of America, which was secured by a first mortgage on the property. Id. ¶ 18. Because plaintiff is a resident of Russia and was not present in the United States at the time of the purchase, he executed a limited power of attorney that

authorized defendant Lekser to execute documents related to the Bank of America loan and mortgage. Id. ¶ 20.

Between 2008 and 2015, plaintiff allegedly invested hundreds of thousands of dollars to make repairs and improvements to the property. Id. ¶¶ 23, 28. Plaintiff alleges that on or around March 30, 2015, he informed defendant Lekser that he wished to list the property for sale to recover his capital investment and an agreed-upon share of the net proceeds from the sale. Id. ¶ 29. According to plaintiff, defendant Lekser responded by perpetrating a fraudulent scheme to withdraw equity from the property for her own personal gain. Id. ¶ 30.

Defendant Lekser allegedly carried out the scheme, along with several co-conspirators also named as defendants, by fraudulently obtaining an $800,000 hard money loan from the lender defendants in November 2015. Id. ¶¶ 31, 77. She allegedly provided false information to the lender defendants, and utilized a fraudulent power of attorney that purported to give her authority to act on plaintiff's behalf, in order to obtain the commercial loan and refinance the then-outstanding Bank of America mortgage encumbering the property. Id. ¶¶ 78–79. Approximately half of the proceeds of the $800,000 loan were utilized to pay off the Bank of America mortgage, while the remaining funds were allegedly misappropriated by defendant Lekser and her co-conspirators. Id. ¶¶ 101, 103, 123. The last payment on the $800,000 loan was made in June 2016, and the loan matured on December 1, 2016.

In June 2016, plaintiff sued defendant Lekser in a related action pending before this Court. See Shvartser v. Lekser, No. 16-cv-1199-JDB (D.D.C. filed June 20, 2016) [hereinafter "Shvartser I"]. In July 2017, this Court granted plaintiff's motion for partial summary judgment in Shvartser I, and provided plaintiff with the ability to access the property, to complete any necessary repairs, to retain a licensed realtor to sell the property, and to deposit all proceeds from the sale with the

Clerk of Court pending the outcome of the litigation.  See July 5, 2017 Order, Shvartser I [ECF No. 87].  Despite the passage of more than eight months, the property has not yet been sold.

On February 28, 2018, after the lender defendants had notified plaintiff that they intended to foreclose on the property on March 1, 2018, plaintiff filed this lawsuit to block the foreclosure sale.  Along with the verified complaint, plaintiff concurrently filed an emergency motion for a temporary restraining order ("TRO").  Mot. for Temporary Restraining Order [ECF No. 3].  The Court held a TRO hearing on the afternoon of February 28, 2018, and granted plaintiff's motion the following day.  See March 1, 2018 Order [ECF No. 6] at 2.  The Court set a briefing schedule for plaintiff's motion for a preliminary injunction and permitted the parties to serve a limited number of interrogatories and document requests in connection with the briefing.  Id. at 2–3.  Plaintiff's motion is now fully briefed and ripe for decision.

## **LEGAL STANDARD**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  Mazurek v. Armstrong, 520 U.S. 968, 972 (1997); see also Abdullah v. Obama, 753 F.3d 193, 197 (D.C. Cir. 2014).  "The purpose of such interim equitable relief is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward."  Trump v. Int'l Refugee Assistance Project, 137 S. Ct. 2080, 2087 (2017) (citation omitted).  A party seeking preliminary injunctive relief must make a "clear showing that four factors, taken together, warrant relief: [1] likely success on the merits, [2] likely irreparable harm in the absence of preliminary relief, [3] a balance of the equities in its favor, and [4] accord with the public interest."  League of Women Voters of U.S. v. Newby, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting Pursuing Am.'s Greatness v. FEC, 831 F.3d 500, 505 (D.C. Cir. 2016)).

3

Courts in this Circuit have often balanced these factors on a "sliding scale" whereby a movant's unusually strong showing on one factor could compensate for weaker showings on one or more other factors. See, e.g., Davis v. Billington, 76 F. Supp. 3d 59, 63–64 (D.D.C. 2014) (citing Davis v. Pension Benefit Guar. Corp., 571 F.3d 1288, 1291–92 (D.C. Cir. 2009)). Still, it is crucial for the movant to show at least some harm to obtain preliminary injunctive relief. See Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."). Moreover, "[a]bsent a 'substantial indication' of likely success on the merits, 'there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review.'" Nat'l Parks Conservation Ass'n v. U.S. Forest Serv., No. 15–01582, 2015 WL 9269401, at *1 (D.D.C. Dec. 8, 2015) (quoting Am. Bankers Ass'n v. Nat'l Credit Union Admin., 38 F. Supp. 2d 114, 140 (D.D.C. 1999)); accord Ark. Dairy Co-op Ass'n, Inc. v. U.S. Dep't. of Agric., 573 F.3d 815, 832 (D.C. Cir. 2009).

There is an open question in this Circuit whether the Supreme Court invalidated the sliding scale approach when it decided Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008), and relatedly whether the likelihood of success factor constitutes an "independent, free-standing requirement for a preliminary injunction". Sherley v. Sebelius, 644 F.3d 388, 392–93 (D.C. Cir. 2011); see also Nat'l Parks Conservation Ass'n, 2015 WL 9269401, at *2.

## **DISCUSSION**

### I. **LIKELIHOOD OF SUCCESS ON THE MERITS**

To begin with, plaintiff claims that he has shown a substantial likelihood of success on his claims for quiet title and negligence. See Pl.'s Mot. for Prelim. Inj. [ECF No. 10] at 7. Plaintiff's

quiet title claim is based on his allegation that defendant Lekser used a fraudulent power of attorney to secure the loan. See Lancaster v. Fox, 72 F. Supp. 3d 319, 326 (D.D.C. 2014) ("Were [plaintiff] successful in proving his fraud allegations, he could . . . clear the title to the property of any cloud created by the contested deeds."). Under District of Columbia law, a deed of trust in favor of a mortgage lender is void if the power of attorney used to acquire it is a forgery. See Smith v. Wells Fargo Bank, 991 A.2d 20, 26–27 (D.C. 2010); id. at 31 ("[E]ven a bona fide purchaser cannot acquire a property right by means of a forged instrument relating to the property."); In re Baxter, 320 B.R. 30, 39 (Bankr. D.D.C. 2004) ("[I]f the Limited Power of Attorney was a forgery, the deed of trust executed pursuant to the Limited Power of Attorney is ineffective."); see also Cruz v. Cruz, 832 N.Y.S.2d 217, 218 (N.Y. App. Div. 2007) ("A deed based on forgery or obtained by false pretenses is void ab initio, and a mortgage based on such a deed is likewise invalid.").

Here, during deposition testimony given in Shvartser I, plaintiff has repeatedly denied that he executed the power of attorney that the lender defendants relied on to complete the subject transaction. See Shvartser Dep. Tr. (Ex. 8 to Pl.'s Mot. for Prelim. Inj.) [ECF No. 10-12] at 44:4–46:13, 59:17–64:12, 66:16–67:4. In addition, the record shows that defendant Lekser did not produce the power of attorney to anyone until just before closing, despite its purportedly being executed seven months earlier. See Lekser Dep. Tr. (Ex. 10 to Pl.'s Mot. for Prelim. Inj.) [ECF No. 10-10] at 99:23-100:3; Vandersnow Dep. Tr. (Ex. 1 to Pl.'s Mot. for Prelim. Inj.) [ECF No. 10-5] at 79:16–21. Plaintiff has also identified numerous "irregularities" on the face of the document, which allegedly call into question its authenticity. A comparison between the 2008 power of attorney—which plaintiff concedes is valid—and the challenged 2015 power of attorney provides further evidence that the later document is not authentic. For example, unlike the 2008 document, the 2015 power of attorney contains no language that is specific to the subject

5

transaction.  Compare Aug. 2008 Power of Attorney (Ex. C to Verified Compl.) [ECF No. 1-3] at 1 (referencing the Bank of America loan in the amount of $417,000), with Apr. 2015 Power of Attorney (Ex. K to Verified Compl.) [ECF No. 1-11] at 1.  Moreover, plaintiff contends that the 2015 document fails to comply with "DC law and/or industry practice" because it is missing certain notarial certifications that were included in the undisputed 2008 power of attorney.  See Pl.'s Reply in Support of Mot. for Prelim. Inj. [ECF No. 15] at 2–3.  And the lender defendants have not countered with any evidence that plaintiff had knowledge of the refinancing or of the execution of the power of attorney.

The record evidence establishes a sufficiently substantial likelihood that the power of attorney was forged, and thus that plaintiff will succeed on his quiet title claim.  This is particularly so where, as explained immediately below, plaintiff has firmly established that he will suffer irreparable harm without an injunction.  See Davis, 571 F.3d at 1291–92 ("If the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor."); Cuomo v. U.S. Nuclear Regulatory Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985) ("A stay may be granted with either a high likelihood of success and some injury, or vice versa.").

The lender defendants' arguments to the contrary do not alter this conclusion.  They first contend that because Ms. Lekser was acting as plaintiff's attorney-in-fact and agent, the Court should consider the deed of trust voidable, rather than void.  Defs.' Opp'n to Mot. for Prelim. Inj. [ECF No. 18] at 24–25.  But this argument assumes that Lekser held a valid power of attorney in 2015—which is the very issue that plaintiff is contesting.  And the two cases cited by defendants in support of this position—one from the Fifth Circuit and one issued by the D.C. Circuit in 1914, see id. at 25 (citing Fisher v. Miocene Oil & Gas Ltd., 335 Fed. Appx. 483, 487 (5th Cir. 2009),

6

and Walker v. McIntire, 41 App. D.C. 380, 383 (D.C. Cir. 1914)—are based on the existence of a fiduciary relationship and did not involve an allegedly forged power of attorney. They are therefore inapposite.

Next, the lender defendants devote significant ink to the doctrine of equitable subrogation, and claim that they are entitled to a lien against the property based on that doctrine. See Defs.' Opp'n to Mot. for Prelim. Inj. at 25–28. But there are several problems with this argument. At the outset, the lender defendants have not asserted a counterclaim against plaintiff for equitable subrogation. Even if they had and ultimately prevailed on that claim, moreover, it does not follow that defendants would be able to proceed immediately with foreclosure. Equitable subrogation would operate only to place the defendants in the same position as the earlier-in-time mortgage owner, Bank of America. See In re Stevenson, 789 F.3d 197, 200 (D.C. Cir. 2015) ("The doctrine of equitable subrogation permits courts to declare that the owner of a mortgage . . . has the same rights as an earlier-in-time owner of another mortgage . . . on the same property, if certain conditions are met."). And the purpose of the application of equitable subrogation—"to prevent forfeiture and unjust enrichment," id.—may be vindicated by either subsequent mortgage payments by plaintiff or the provision of a portion of the proceeds to the defendants once the property is sold.

Finally, the lender defendants contend that, beyond equitable subrogation, the deed of trust "would still be valid [based] on Ms. Lekser's one-half interest in the Property." Defs.' Opp'n to Mot. for Prelim. Inj. at 28. They cite no authority for this proposition and it is contrary to governing law. See Smith, 991 A.2d at 26–27 ("[A] deed of trust in favor of [a] mortgage lender would be void if the [Power of Attorney] was a forgery, or if the [Power of Attorney] was valid but the [attorney-in-fact] exceeded the authority it gave her[.]"); 20 Am. Jur. 2d Cotenancy and Joint

7

Ownership § 3 ("[O]ne cotenant cannot ordinarily bind fellow cotenants by contracts with third persons, unless duly authorized to do so, or unless the cotenants later ratify this act."). This argument is also inconsistent with the testimony of the lender defendants' representative, Mr. Vandersnow, who admitted during his deposition that the transaction would not have closed without a valid power of attorney from plaintiff. See Vandersnow Dep. Tr. (Ex. 1 to Pl.'s Mot. for Prelim. Inj.) [ECF No. 10-5] at 82:17–83:4.[1]

## II. IRREPARABLE HARM

To obtain the requested injunctive relief, a movant must satisfy a "high standard for irreparable injury." Chaplaincy of Full Gospel Churches, 454 F.3d at 297. To make the required showing, a movant must satisfy a two-part test. See id. First, the injury "must be both certain and great; it must be actual and not theoretical." Id. (citation omitted); accord Coal. for Common Sense in Gov't Procurement v. United States, 576 F. Supp. 2d 162, 168 (D.D.C. 2008). Second, "the injury must be beyond remediation." Chaplaincy of Full Gospel Churches, 454 F.3d at 297. Here, plaintiff has demonstrated that, in the absence of injunctive relief, he will suffer irreparable harm for which there is no adequate remedy at law. The foreclosure sale will cause plaintiff to lose his interest in the property, an injury which other courts have deemed irreparable harm. See Patriot-BSP City Ctr. II v. U.S. Bank Nat. Ass'n, 715 F. Supp. 2d 91, 95–96 (D.D.C. 2010) (holding that a foreclosure sale was an irreparable injury); Peterson v. D.C. Lottery & Charitable Games Control Bd., No. 94-1643, 1994 WL 413357, at *4 (D.D.C. July 28, 1994) ("It is settled beyond the need for citation . . . that a given piece of property is considered to be unique, and its loss is always an irreparable injury.").

---

[1] Because plaintiff has shown a likelihood of success on his quiet title claim, the Court need not analyze whether he is entitled to a preliminary injunction based on his negligence claim.

Plaintiff's injury is also "of such *imminence* that there is a clear and present need for equitable relief." Chaplaincy of Full Gospel Churches, 454 F.3d at 297 (internal quotation marks omitted). The foreclosure sale was initially scheduled for March 1, 2018, before it was blocked when the Court granted a TRO. The TRO is set to expire on April 13, 2018, and the lender defendants have expressed their intention to proceed expeditiously with a foreclosure sale absent injunctive relief. Finally, the threatened injury is beyond remediation. See Tauber v. Quan, 938 A.2d 724, 732 (D.C. 2007) ("When land is the subject matter of the agreement, the legal remedy is assumed to be inadequate, since each parcel of land is unique.").

The lender defendants' arguments to the contrary are unconvincing. They first misconstrue Patriot-BSP City Center II to suggest that real property must be "especially unique" in order for its loss to constitute irreparable harm. See Defs.' Opp'n to Mot. for Prelim. Inj. at 29. Not so. Indeed, "it is well-settled that unauthorized interference with a real property interest constitutes irreparable harm as a matter of law, given that a piece of property is considered to be a unique commodity for which a monetary remedy for injury is an inherently inadequate substitute." 7-Eleven, Inc. v. Khan, 977 F. Supp. 2d 214, 234 (E.D.N.Y. 2013). The lender defendants also contend that plaintiff's prior interest in selling the property somehow renders this harm not irreparable. See Defs.' Opp'n to Mot. for Prelim. Inj. at 29. But they cite no authority for this proposition. Inherent in ownership of property is the right to dispose of the property as one chooses. Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435 (1982) (describing property rights as the rights "to possess, use and dispose of it"). Plaintiff's desire to execute the sale himself is not equivalent to acceding to a foreclosure sale, for the reasons discussed above.

### III. BALANCE OF THE EQUITIES

The third factor "requires the Court to 'balance the competing claims of injury,' which involves 'consider[ing] the effect on each party of the granting or withholding of the requested relief.'" Am. Meat Inst. v. U.S. Dep't. of Agric., 968 F. Supp. 2d 38, 81 (D.D.C. 2013) (quoting Winter, 555 U.S. at 24)). The lender defendants contend that they will be harmed by the imposition of a preliminary injunction because they will have to wait longer to receive their money. Defs.' Opp'n to Mot. for Prelim. Inj. at 29. However, as the Court recognized in granting the TRO, interest will continue to accrue on the subject loans—hence, defendants will be financially compensated for any delay. Besides, "the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." Sampson v. Murray, 415 U.S. 61, 90 (1974). And "in the absence of special circumstances"—which the lender defendants do not assert apply here— "recoverable economic losses are not considered irreparable." Taylor v. Resolution Trust Corp., 56 F.3d 1497, 1507 (D.C. Cir. 1995).

The lender defendants also speculate that a trial in this matter will not be scheduled until sometime after November 2018, in which case they will be required to re-obtain a foreclosure mediation certificate. Defs.' Opp'n to Mot. for Prelim. Inj. at 30. But that is speculative, and any fears about a lengthy delay or the expiration of the foreclosure mediation certificate are mitigated by plaintiff's willingness to proceed to a trial on the merits expeditiously, as permitted under the federal rules.[2] See Fed. R. Civ. P. 65(a)(2) ("Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing."); Pl.'s Mot. for Prelim. Inj. at 20 ("Plaintiff intends to prove all of the above at trial,

---

[2] The lender defendants also posit that a preliminary injunction will result in a lower sales price because they will be unable to complete a foreclosure sale in the "Spring market." Defs.' Opp'n to Mot. for Prelim. Inj. at 30. Plaintiff labels this speculation and responds that "the Property will sell for more in the event that renovations are completed, which would not be the case in the event of a hurried foreclosure sale." Pl.'s Reply in Support of Mot. for Prelim. Inj. at 18. The current record does not clearly establish which of these arguments is correct, so the Court will not rely on either.

and stands ready to do so in an expedited fashion."); see also id. at 7 (requesting "that the injunction hearing be converted to a trial on the merits"). On balance, then, any harm to the lending defendants is not irreparable; moreover, it is significantly less than the harm that plaintiff will suffer from his loss of interest in specific real property. Hence, this factor also tips in favor of injunctive relief.

## IV. THE PUBLIC INTEREST

The final factor that the Court must consider is the public's interest in granting or denying the requested injunction. See Winter, 555 U.S. at 24 ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." (citation omitted)). This factor does not strongly favor either side, although it weighs slightly in plaintiff's favor. Here, plaintiff contends that "the Public Interest is served by permitting the Plaintiff to continue trying to expose the underlying fraud in this case." Pl.'s Mot. for Prelim. Inj. at 23. The lender defendants respond that "[a]n empty house . . . is not in the public interest" and "[a]llowing the foreclosure sale to proceed will allow a third party to renovate the Property and put it to good use in society." Defs.' Opp'n to Mot. for Prelim. Inj. at 30. As to the other defendants, Ms. Lekser indicated during the TRO hearing that she supports plaintiff's motion (though she disputes that the power of attorney was fraudulent), while the remaining defendants have no colorable interest in the property. The Court concludes that the public has an interest in seeing that an innocent property owner is not deprived of his or her interest in real property by fraud. Granting the requested injunction will provide plaintiff with an opportunity to prove his quiet title claim, while denying the injunction will allow the foreclosure sale to occur before plaintiff has an opportunity to prove that his interest was extinguished by fraud. And although the lender defendants have expressed concern about the house remaining empty, plaintiff

11

has represented in his briefing and at the TRO hearing that he intends to move forward promptly with the sale of the property. The Court notes that plaintiff should in fact do so, as he has provided no basis to wait until this action is resolved on the merits to complete the sale of the property, in accordance with the Court's July 5, 2017 Order in Shvartser I.

## **CONCLUSION**

For the foregoing reasons, the Court will grant plaintiff's motion for a preliminary injunction. A separate Order will be issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: April 11, 2018