# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| KONSTANTIN SHVARTSER, <br><br> Plaintiff, <br><br> v. <br><br> EVELINA LEKSER, et al., <br><br> Defendants. |

Civil Action No. 18-473 (JDB)

## MEMORANDUM OPINION

Before the Court is [29] the motion by defendants Snowpoint Capital, LLC and SP Funding 452, LLC (together, the "lender defendants") for reconsideration of [24] the Court's order granting plaintiff's motion for a preliminary injunction. For the reasons explained below, the lender defendants' motion for reconsideration will be denied.

## BACKGROUND

Because the Court has reviewed the lengthy factual and procedural history of this case in prior opinions, it will do so again here only briefly. Plaintiff Konstantin Shvartser and defendant Evelina Lekser are father and daughter, and in 2008 they purchased a house located at 2150 Florida Avenue in northwest Washington, D.C. (the "property") for $800,000. Verified Compl. [ECF No. 1] ¶¶ 1–2, 15, 17. Although Shvartser and Lekser initially intended to renovate the house and sell it at a profit, the pace of the renovations fell behind, and in 2015 Shvartser informed Lekser that he wished to sell the property to recoup his investment. Id. ¶¶ 16, 29. According to Shvartser, this demand prompted Lekser to "embark[] on a fraudulent scheme to withdraw equity from the Property." Id. ¶ 30. Shvartser alleges that Lekser forged a document that purported to grant her Shvartser's power of attorney to refinance the property, id. ¶ 78, which she then used to obtain an

$800,000 loan from the lender defendants, id. ¶¶ 31, 40, the proceeds of which she kept for herself after paying off an existing mortgage on the property, id. ¶ 101.

In 2016, Shvartser filed a complaint against Lekser alleging fraud, breach of contract, and other claims arising out of the forgoing alleged events. That complaint, and dispositive motions related thereto, are currently pending in another case before this Court. See Shvartser v. Lekser, Civil Action No. 16-1199 (JDB) (D.D.C. filed June 20, 2016). Shvartser filed this related case in late February 2018, after the lender defendants notified him of their intent to foreclose on the property because of Lekser's default on the $800,000 loan. See Compl. ¶¶ 184–85. Shvartser sought a temporary restraining order against the foreclosure, which the Court entered on March 1, see Order [ECF No. 6], and which Shvartser later moved to convert into a preliminary injunction, see Pl. Konstatin Shvartser's Mot. for Prelim. Inj. ("Pl.'s PI Mot.") [ECF No. 10].

The Court then granted Shvartser's motion, explaining that Shvartser had satisfied the four-part test that courts use to decide whether to grant preliminary injunctive relief. See Shvartser v. Lekser, 308 F. Supp. 3d 260, 264–65, 269 (D.D.C. 2018). First, the Court found that Shvartser had shown a "likelihood of success on the merits" of his claim to quiet title to the property. Id. at 265. "Under District of Columbia law," the Court explained, "a deed of trust in favor of a mortgage lender is void if the power of attorney used to acquire it is a forgery." Id. (citing Smith v. Wells Fargo Bank, 991 A.2d 20, 26–27 (D.C. 2010)). Here, Shvartser had not only testified under oath that the 2015 power of attorney was forged, but he had also presented several other reasons to doubt its validity. See id. at 265 (summarizing those reasons). The Court also rejected the lender defendants' reliance on the doctrine of equitable subrogation—which, the Court pointed out, they had not asserted as a counterclaim—and their argument that "the deed of trust 'would still be valid

[based] on Ms. Lekser's one-half interest in the Property.'" Id. at 266 (citations omitted). This latter argument, the Court concluded, was contrary to District of Columbia law. See id.

Second, the Court found that Shvartser had shown an irreparable injury because the foreclosure sale presented a "certain and great" threat of interference with his "right to dispose of the property as [he] chooses"—a right that the Court recognized as being "[i]nherent in ownership of property." Id. at 267 (citations omitted). Third, the Court found that the balance of equities tipped in Shvartser's favor, since the harm to his property rights outweighed the purported harms to the lender defendants of having to wait to recover the balance of the loan (since interest was continuing to accrue on that loan), and of potentially having to obtain a new mediation certificate (a prerequisite to foreclosure under D.C. law) if the existing certificate were to expire in November 2018.[1] Id. at 267–68. Fourth, the Court found that the public interest "weighs slightly in plaintiff's favor" because "the public has an interest in seeing that an innocent property owner is not deprived of his or her interest in real property by fraud." Id. at 268–69. Thus, the Court granted the motion and preliminarily enjoined the lender defendants from foreclosing on the property. Id. at 269.

The lender defendants now seek reconsideration of that decision. See SnowPoint Capital, LLC and SP Funding 452, LLC's Mot. for Recons. ("Lender Defs.' Mot.") [ECF No. 29] at 1. They do so on two grounds: first, they argue that the Court should have held an evidentiary hearing to test the veracity of Shvartser's testimony regarding the allegedly forged power of attorney, see id. at 2–6; and second, they claim that the Court committed legal error when it concluded that the lender defendants could not foreclose on Lekser's one-half interest in the property if the power of

---

[1] In reaching this conclusion, the Court relied on Shvartser's express "willingness to proceed to a trial on the merits expeditiously." See id. at 268 (citing statements to that effect in Shvartser's briefs). Approximately five months have passed since the Court's entry of the preliminary injunction, however, and this case is no closer to trial than it was in April—due in large part to mediation attempts that seem to have proven unsuccessful thus far. Though the lender defendants do not expressly rely on the mediation certificate in their reconsideration motion, the Court is mindful that the expiration of that certificate is far more imminent now than it was in April 2018.

attorney were indeed fraudulent, see id. at 6–10.  Shvartser has filed a response to the lender defendants' motion, see Br. in Opp'n to Defs.' Mot. for Recons. ("Pl.'s Opp'n") [ECF No. 32], which is now fully briefed and ripe for decision.

## **LEGAL STANDARD**

As an initial matter, the Court must determine the correct legal standard to apply to the lender defendants' motion for reconsideration.  Although the lender defendants assume, and Shvartser does not dispute, that Federal Rule of Civil Procedure 59(e) is the correct vehicle for their motion, the Court does not share the parties' confidence.  Thus, out of an abundance of caution and for the reasons explained below, the Court will apply the less demanding standard of Federal Rule of Civil Procedure 54(b), which governs the reconsideration of interlocutory decisions.  See Scahill v. District of Columbia, 286 F. Supp. 3d 12, 17 (D.D.C. 2017) (discussing the differences between Rule 59(e) and Rule 54(b)).

Under Rule 59(e), a party may move "to alter or amend a judgment . . . no later than 28 days after the entry of the judgment."  This rule "provides a limited exception to the rule that judgments are to remain final," and a court "may grant a motion to amend or alter a judgment under three circumstances only: (1) if there is an 'intervening change of controlling law'; (2) if new evidence becomes available; or (3) if the judgment should be amended in order to 'correct a clear error or prevent manifest injustice.'" Leidos, Inc. v. Hellenic Republic, 881 F.3d 213, 217 (D.C. Cir. 2018) (citation omitted).  Moreover, because "Rule 59(e) motions are aimed at 'reconsideration, not initial consideration,'" id. (quoting District of Columbia v. Doe, 611 F.3d 888, 896 (D.C. Cir. 2010)), the rule "'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment,'" id. (quoting Exxon Shipping v. Baker, 554 U.S. 471, 486 n.5 (2008)).

4

But Rule 59(e) applies only to final judgments. See Scahill, 286 F. Supp. 3d at 17. Interlocutory orders, on the other hand, "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Whereas Rule 59(e) "sets a high threshold" for reconsideration, Rule 54(b)'s "more flexible" standard allows it "as justice requires." Scahill, 286 F. Supp. 3d at 17 (quoting Cobell v. Jewell, 802 F.3d 12, 25 (D.C. Cir. 2015)). "Justice may require reconsideration 'where a court has "patently misunderstood a party[,] . . . has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court."'" Id. at 17–18 (alterations in original) (citations omitted); see Singh v. George Wash. U., 383 F. Supp. 2d 99, 101 (D.D.C. 2005) ("Errors of apprehension may include a Court's failure to consider 'controlling decisions . . . that might reasonably be expected to alter the conclusion reached by the court.'" (citation omitted)). However, even a Rule 54(b) motion cannot be used "to reargue facts and theories upon which a court has already ruled" or to "present[] theories or arguments that could have been advanced earlier." Dunlap v. Presidential Advisory Comm'n on Election Integrity, Civil Action No. 17-2361 (CKK), 2018 WL 3150217, at *4 (D.D.C. June 27, 2018) (citation omitted).

Courts in this district have reached different conclusions as to whether Rule 54(b) or Rule 59(e) governs a request for reconsideration of an order granting or denying preliminary injunctive relief. Compare Dunlap, 2018 WL 3150217, at *7 (declining to evaluate such a reconsideration motion under "what appears to be a higher standard associated with Rule 59(e)" because "the Court has not entered final judgment"), with Fox TV Stations, Inc. v. FilmOn X, LLC, 968 F. Supp. 2d 134, 139 (D.D.C. 2013) (agreeing with the nonmovant that "the heightened standard of Rule 59(e) for reconsideration of final judgments—not the 'as justice requires' standard of Rule 54(b)—

5

applies to preliminary injunctive orders that can be appealed under 28 U.S.C. § 1292(a)(1)"). Because the parties have not briefed this issue, and because the Court concludes that, "in any event . . . , the Rule 54(b) standard is not satisfied [here]," Dunlap, 2018 WL 3150217, at *7, the Court will do as the court did in Dunlap and apply Rule 54(b)'s more forgiving standard.

**DISCUSSION**

  I. **THE COURT'S DECISION TO ENTER THE PRELIMINARY INJUNCTION WITHOUT FIRST HOLDING AN EVIDENTIARY HEARING**

The lender defendants first assert that the Court erred by "assum[ing] that Mr. Shvartser did not execute the [2015] power of attorney." Lender Defs.' Mot. at 2. Given that this factual assertion of Shvartser's is "bitterly contested," the lender say that they were "surprised" that the Court "did not, at the very least, schedule an evidentiary hearing." Id. at 2, 6.

Although the lender defendants nowhere said so in their briefing on the preliminary injunction motion, see SnowPoint Capital, LLC And SP Funding 452, LLC's Opp'n to Pl.'s PI Mot. ("Lender Defs.' Opp'n to Pl.'s PI Mot.") [ECF No. 18] at 11–31, they now correctly point out that "if there are genuine issues of material fact raised in opposition to a motion for a preliminary injunction, an evidentiary hearing is required." Cobell v. Norton, 391 F.3d 251, 261 (D.C. Cir. 2004); see Lender Defs.' Mot. at 2. As the D.C. Circuit has explained, "when a [district] court must make credibility determinations to resolve key factual disputes in favor of the moving party, it is an abuse of discretion for the court to [grant preliminary injunctive relief] on the basis of documents alone." Cobell, 391 F.3d at 261.

Here, however, the lender defendants did not raise any "genuine issues of material fact" as to Shvartser's credibility in opposition to the preliminary injunction motion. Indeed, aside from a fleeting reference to "the less than credible testimony of Mr. Shvartser during his deposition," see Lender Defs.' Opp'n to Pl.'s PI Mot. at 11, the lender defendants did not address Shvartser's

credibility at all. See, e.g., id. at 23–25 (arguing instead that Shvartser's quiet-title claim likely would fail because, among other things, "Ms. Lekser served as and was, at all relevant times, Mr. Shvartser's agent and fiduciary" with respect to the property). Thus, even assuming that the purported inconsistencies in Shvartser's deposition testimony identified for the first time in the lender defendants' reconsideration motion raise "key factual disputes," Cobell, 391 F.3d at 261— a question the Court need not and hence does not decide here—the lender defendants did not raise those inconsistencies in their opposition, so they may not rely on them to demand a hearing now. See Dunlap, 2018 WL 3150217, at *4 (reconsideration under Rule 54(b) is not a means to "present[] theories or arguments that could have been advanced earlier"). Moreover, the Court notes that although Shvarster's preliminary injunction motion asks for a hearing, see Statement of P. & A. in Supp. of Pl.'s Mot. for Prelim. Inj. [ECF No. 10-1] at 7, the lender defendants' opposition brief did not, see Lender Defs.' Opp'n to Pl.'s PI Mot. at 10–31. It should have come as no surprise to the lender defendants that the Court did not grant them a form of relief that they did not request. Their motion for reconsideration will be denied as to this first ground.

## II. THE COURT'S CONCLUSION THAT THE LENDER DEFENDANTS COULD NOT FORECLOSE ON LEKSER'S ONE-HALF INTEREST IN THE PROPERTY

Next, the lender defendants argue that the Court erroneously rejected their argument that even if the 2015 power of attorney were fraudulent, the resulting deed of trust "would still be valid [based] on Ms. Lekser's one-half interest in the Property." Shvartser, 308 F. Supp. 3d at 266 (quoting Lender Defs.' Opp'n to Pl.'s PI Mot. at 28); see Lender Defs.' Mot. at 6–10. Although the lender defendants argued primarily that they were entitled to foreclose on the entire property— either because Lekser had validly encumbered Shvartser's one-half interest, see Lender Defs.' Opp'n to Pl.'s PI Mot. at 23–25, or under the doctrine of equitable subrogation if the encumbrance was invalid, see id. at 25–28—they also argued in the alternative that, at a minimum, they were

7

entitled to a lien against Ms. Lekser's one half interest in the property "as there is no dispute that she was an owner of the Property and that she executed the . . . Deed of Trust," see id at 28–29. The Court rejected this argument, explaining that "a deed of trust in favor of a mortgage lender is void if the power of attorney used to acquire it is a forgery," Shvartser, 308 F. Supp. 3d at 265 (citing Smith, 991 A.2d at 26–27). It also rejected the lender defendants' argument that an exception to this rule applies where, as alleged here, the person who forged the power of attorney is a joint owner of the property, because the lender defendants had "cite[d] no authority for this proposition and it was contrary to [D.C.] law." Id. at 266.

The lender defendants renew this argument in their motion for reconsideration, see Lender Defs.' Mot. at 6–10, this time mustering a few out-of-circuit authorities suggesting that a deed of trust procured by forgery is valid as to any interest in the property held by the forger. See id. (first citing Fagnani v. Fisher, 15 A.3d 282, 291–92 (Md. 2011) (applying Maryland law); then citing United States v. Sosa, 77 F.3d 484 (7th Cir. 1996) (unpublished) (applying Illinois law)).[2] These authorities were not cited previously, however, see Lender Defs.' Opp'n to Pl.'s PI Mot. at 28–29 (citing no legal authorities whatsoever), and the lender defendants' reconsideration motion does not explain why. This is reason enough to deny the lender defendants' motion.

In any case, even if the lender defendants were correct in their reading of D.C. law, they would still not be entitled to reconsideration. As the Court's prior opinion explained, the interest protected by the preliminary injunction was Shvartser's right to dispose of his interest in the

---

[2] It is true, as the lender defendants point out, that "[b]ecause District of Columbia common law is derived from Maryland law, decisions of the Court of Appeals of Maryland, and particularly those relating to the law of property, are accorded the most respectful consideration by our courts." Lender Defs.' Mot. at 10 n.2 (quoting Roberts-Douglas v. Meares, 624 A.2d 405, 419 (D.C. 1992)). Nevertheless, decisions of the Maryland Court of Appeals are not "controlling" in the District of Columbia, so failure to consider them does not necessarily amount to an "[e]rror[] of apprehension" that must be corrected on a Rule 54(b) motion. Singh, 383 F. Supp. 2d at 101 (citation omitted).

property, see Shvartser, 308 F. Supp. 3d at 267, one of the core components of the "'bundle' of property rights" that comes with property ownership, Horne v. Dep't of Agric., 135 S.Ct. 2419, 2428 (2015) (citation omitted). Hence, even if the lender defendants could foreclose on Lekser's one-half interest alone, that foreclosure would still interfere with Shvartser's ownership rights because the lender defendants—not Shvartser—would control the sale. Unlike the lender defendants, who are mere lienholders, see United States v. Sec. Indus. Bank, 459 U.S. 70, 76 (1982) (noting that "[t]he 'bundle of rights' which accrues to a secured party is obviously smaller than that which accrues to an owner"), Shvartser has "an absolute right to partition" the property by sale, Shvartser v. Lekser, 257 F. Supp. 3d 30, 33–34 (D.D.C. 2017) (citing D.C. Code § 16–2901), and indeed he has exercised that right and obtained a partition order from this Court, see id. at 37. Therefore, in addition to interfering with Shvartser's exercise of his property rights, foreclosure by the lender defendants—whether as to the entire property or only as to Lekser's one-half interest—would upset the status quo and interfere with the Court's order. See Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." (citing Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981))). Therefore, the correctness of the lender defendants' reading of D.C. law is ultimately immaterial and cannot provide a basis for reconsidering the Court's grant of preliminary injunctive relief here.

## CONCLUSION

For the foregoing reasons, the lender defendants' motion for reconsideration will be denied. A separate order has been entered on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: September 13, 2018